DECISION
Plaintiff-appellant, David L. Willman, appeals from a decision of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("SPBR") upholding the abolishment of his position with the Ohio Department of Natural Resources ("ODNR").[1] Appellant was employed by ODNR for some twenty-three years, the last twenty-two as a Reclamation Inspector Supervisor ("RIS") in the Division of Mines and Reclamation. In March 1996, the Division of Mines and Reclamation proposed a reorganization, which would abolish thirty-nine positions within the division, and create fourteen new positions for a net reduction in force of twenty-five positions. Pursuant to the reorganization, all RIS positions would be abolished, and their duties assigned to a new position entitled Natural Resources Administrator 2 ("NRA2"). The new NRA2 category would, under the proposal, assume additional duties as well. The extent to which these new duties materially distinguished the former RIS position from the new NRA2 position was a factually disputed issue in the present action.
At the time of the reorganization and abolishment of the RIS position, appellant supervised the district offices in St. Clairsville and Zanesville. He was fifty-two years of age. After the abolishment, appellant applied for the newly created NRA2 positions in Cambridge and New Philadelphia, but after interviewing was offered neither post. The Cambridge NRA2 position was given to Brad Burwell, and the New Philadelphia position was given to Dave Clark. Both men were Reclamation Inspection Supervisors with the division, but neither had as many years of experience as appellant in that post.
Appellant filed an appeal with the SPBR challenging the abolishment of his position, and generally challenging the abolishment of all RIS positions in the Division of Mines and Reclamation. The matter was heard before an administrative law judge, who issued a report and recommendation for affirmance of the abolishments. The SPBR subsequently adopted the administrative law judge's recommendation and affirmed the abolishment of appellant's position. Appellant then filed his appeal from the SPBR's order to the Franklin County Court of Common Pleas. Based upon the evidence presented at the previous administrative hearing before the SPBR, the court of common pleas found that the new NRA2 position, while it incorporated the previous duties of the former RIS position, included new responsibilities not present in the former specifications for the RIS position. These included policy-making and program implementation; preparation of technical reports; and development of division-wide budgets. The court noted, that while appellant testified that he had input as an RIS in these areas, the NRA2 position was responsible for the actual development and implementation of the policies and budgets, rather than merely providing input. The court also noted testimony that the NRA2 was a much more technical position, involving supervision of engineers and hydrologists along with the other duties, unlike the RIS position.
The court also addressed age discrimination and favoritism claims raised by appellant. The court found that several other older employees of the division had been retained after the reorganization, and that other than bare allegations of favoritism there was no evidence that Clark and Burwell, despite their lesser seniority, were less qualified than appellant for the NRA2 positions. The court also found that the division had not acted in bad faith when it transferred another division employee, Reclamation Inspector Thomas Pulay, from another office to Guernsey County the day after appellant's abolishment, thus eliminating the opportunity for appellant to displace Mr. Pulay for this RIS position. The court noted that appellant has not been an RIS since his appointment to the RIS position some twenty-two years before, and thus did not hold the same classification as the employee, Mr. Pulay, that appellant wished to bump.
The court of common pleas accordingly found that the abolishment of appellant's position was supported by substantial, reliable, and probative evidence and in accordance with law, and affirmed the order of the SPBR upholding the abolishment of appellant's position.
Appellant has timely appealed and brings the following three assignments of error:
 1. The Court of Common Pleas Committed Reversible Error When It Affirmed the Order Of The State Personnel Board Of Review Upholding The Abolition Of Appellants' Positions At The Ohio Department Of Natural Resources.
 2. The Court of Common Pleas Committed Reversible Error In Holding That Appellee Ohio Department Of Natural Resources Proved By A Preponderance Of The Evidence That It Abolished The Positions Held By Appellants For Reasons Of Efficiency And Economy.
 3. The Court of Common Pleas Committed Reversible Error In Holding That Appellants Failed To Prove By A Preponderance Of The Evidence That The Abolishments In Question Were Done In "Bad Faith."
R.C. 119.12 establishes the standard of review to be applied by the common pleas court when reviewing an administrative appeal. The court may affirm the appeal of the agency if it finds, based upon consideration of the entire record and such additional evidence as may be admitted by the court, that the order is supported by substantial, reliable, and probative evidence and is in accordance with law. When considering an appeal from the court of common pleas, our standard of review is limited to a determination of whether the court of common pleas abused its discretion in finding that there was substantial, reliable, and probative evidence in the record to support the order of the administrative agency, and in finding that the order was in accordance with law. Rohde v. Farmer (1970), 23 Ohio St.2d 82;Hartzog v. Ohio State University (1985), 27 Ohio App.3d 214. The term "abuse of discretion" implies a decision that is both without reasonable basis and clearly wrong. Angelkovski v. Buckeye PotatoChips Co. (1983), 11 Ohio App.3d 159. An abuse of discretion implies not merely an error in judgment, but "perversity of will, passion, prejudice, partiality, or moral delinquency." State exrel. Commercial Lovelace Motor Freight, Inc. v. Lancaster (1986),22 Ohio St.3d 191, 193. On questions of law, however, the discretion of the court of common pleas is limited and our review is plenary. University Hospital, University of Cinn. College ofMedicine v. State Employment Relations Bd. (1992), 62 Ohio St.3d 339, paragraph one of the syllabus.
Appellant's first assignment of error asserts that appellee improperly abolished the position held by appellant. Appellant asserts that the proper abolishment of a civil service position requires the permanent deletion of duties associated with the position, without shifting any or all of the duties to a new employee in a newly created position. It is undisputed in the present case that appellant was a classified employee entitled to the protection of the civil service. R.C. 124.321(D) provides in pertinent part:
 Employees may be laid off as a result of abolishment of positions. Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority.
In the present case, a number of RIS positions were abolished in favor of a smaller number of new NRA2 positions, performing the bulk of the former RIS duties as well as several additional duties as testified to by Lisa Morris, Chief of the Division of Mines and Reclamation. Ms. Morris testified that NRA2s would perform the following additional duties: (1) policy making and program implementation; (2) preparing technical reports regarding surface water complaints; (3) preparing technical reports regarding ground water complaints; and (4) developing budgets with division-wide implications. This testimony was corroborated to a certain extent by the testimony of appellant's co-litigant before the SPBR, Gregory Mills, who testified that he had not performed the above duties in his position as an RIS. Appellant's own testimony also supported some of these differences.
A job abolishment may be upheld although a new position is subsequently created that incorporates some or all of the duties of the abolished position, provided that some duties are not assumed or additional duties can be assigned to distinguish the new position. Shoemaker v. Ohio Bureau of Emp. Serv. (Mar. 17, 1994), Franklin App. No. 93APE-08-1180, unreported (1994 Opinions 970). "[A]lthough the [new] district coordinator position involves duties similar to the former regional manager position, the district coordinator position requires additional responsibilities, including the `actual planning and development of policy.'" Id. at 975-976. We thus found that there was evidence to support the appointing authority's position that the scope and aim of the newly created positions differed from the abolished ones.
Based upon review of the record, and application of the above authorities to the facts of this case, it is apparent that the court of common pleas did not abuse its discretion in finding that there was substantial, reliable, and probative evidence to support the SPBR's finding that appellant's position was properly abolished, and not merely relabeled as asserted by appellant. Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that the reorganization of the Division of Natural Resources was not prompted by reasons of economy or lack of work. Testimony of Ms. Morris, and others, before the SPBR laid the foundation for the circumstances which prompted the reorganization. Passage of the Federal Clean Air Act of 1990 has severely impacted the use of high-sulfur coal mined in Ohio, which has diminished in favor of natural gas and low sulfur coal originating in western states as utilities switch power plants to alternate fuels to comply with the Act. This accordingly has led to a significant decline in the number of new permit applications filed in the region, and an overall reduction in operating coal mines state wide of nearly fifty percent. Furthermore, there has been a significant shift from surface mining, which was regulated by ODNR's Division of Mines and Reclamation which employed appellant, to underground coal mining production, which was not governed by the division.
In response to these trends in the industry regulated by ODNR's Division of Mines and Reclamation, the division's efficiency was to be addressed by shifting positions from areas of declining coal production to areas where production had been maintained, transferring central office program functions to field positions, consolidating two district offices to reduce operational overhead, reorganizing and reducing the number of field teams and central office teams, and seeking to privatize certain functions, such as engineering.
Ms. Morris and Charles Schlutz, chief of ODNR's office of employee services, testified that the organization would yield a net reduction of twenty-five positions, taking into account the abolishment of thirty-nine positions (including nine RIS's) and creating fourteen new positions, including three NRA2s.
The need to reorganize was not only prompted by reasons of efficiency in response to changing trends in the surface coal mining industry, but by the need to economize because the number of mines ceasing production had led the division to face a million dollar budget shortfall for the fiscal year 1995. Ms. Morris testified that the reorganization had in fact resulted in annual budget savings of two million dollars.
In light of the credible testimony regarding the state wide changes in the surface mining industry, with a concomitant need to reorganize the division regulating such activities, and the demonstrated savings resulting from the reorganization, we find that the court of common pleas did not abuse its discretion as there was substantial, reliable, and probative evidence supporting abolishment of appellant's position for purposes of "the efficient operation of the appointing authority for reasons of economy, or for lack of work." R.C. 124.321(D). Appellant's second assignment of error is accordingly overruled.
Appellant's third assignment of error asserts that the abolishment of appellant's position was performed in bad faith. Ohio Adm. Code 124-7-01(A) provides that "job abolishments shall be disaffirmed if the action was taken in bad faith. Bad faith may be established by showing appropriate evidence or inferences therefrom that the job abolishments were not made in good faith and were used as a subterfuge to subvert the civil service system." State ex rel. Gould v. Bureau of Emp. Serv. (1985),28 Ohio App.3d 30, 32. The employee bears the burden of proof to demonstrate bad faith on the part of appointing authority. Id. Bad faith encompasses more than a demonstrated personal or political animus for the discharge, but includes any such effort to subvert the civil service system to allow the selection of hand-picked employees to fill jobs that should have been available to civil service workers based upon seniority. Blinn v. Ohio Bur. of Emp.Serv. (1985), 29 Ohio App.3d 77, 80.
Appellant advances three instances of alleged bad faith on the part of appellee. First, appellant claims that the transfer of Pulay, a reclamation inspector, from Belmont County to Guernsey County on July 1, 1996, the day after the abolishment of appellant's job, demonstrates a bad faith effort to subvert the civil service system and preserve Pulay's position by preventing appellant from "bumping" into the position. We note that Ohio Adm. Code 123:1-41-12(D)(2) states that a laid-off employee may only displace into a classification previously held within the proceeding five years. Since appellant did not meet the requirements of this section, he could not have displaced Pulay even if the transfer had been effected prior to the abolishment of appellant's position. Furthermore, appellant concedes that the entire Belmont County headquarters office of the division, consisting of six employees, was transferred to Guernsey County. Pulay's transfer, in the context of the relocation of an entire office, is not of itself probative evidence of bad faith on the part of appellee.
Appellant also asserts bad faith in the hiring of Clark and Burwell to NRA2 positions for which appellant had applied. Appellant, other than his concededly greater seniority, provided no evidence other than his own testimony regarding his superior qualifications over either Clark or Burwell for the NRA2 position. In contrast, appellee was able to point to the interview scoring process to support the hiring of Clark and Burwell. Under our current standard of review, faced with competing evidence to be weighed by the SPBR, it was not an abuse of discretion for the court of common pleas to find that no bad faith had been demonstrated.
Finally, appellant argues that he has established a prima facie case of age discrimination, which demonstrates bad faith on the part of appellee. In order to establish a prima facie case of age discrimination, discriminatory intent may be established indirectly through the four part analysis set forth inBarker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, by showing that the employee was a member of a statutorily-protected class, that he was discharged, that he was qualified for the position, and that he was replaced by, or that his discharge permitted the retention of a person not belonging to the protected class. Id, paragraph one of the syllabus. Discrimination may also be established by direct evidence of age discrimination, which is evidence other than the four-part test in Barker. A plaintiff may establish a prima facie case in this respect by presenting evidence of any nature to show that an employer more likely than not was motivated by discriminatory intent. Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, paragraph one of the syllabus. Once the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to provide some legitimate, non-discriminatory reason for the adverse job action. Beauchamp v. CompuServe Inc., (Apr. 9, 1998), Franklin App No. 97AP-1093, unreported (1998 Opinions 1035, 1044.) If the employer establishes a non-discriminatory reason, the burden shifts back to the plaintiff to show that the employer's stated reason was merely pretextual. Plumbers Steamfitters Commt. v.Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 198, citingMcDonnell Douglas v. Green (1973), 411 U.S. 792, 804.
Appellant has advanced no case law in support of the proposition that a prima facie case of age discrimination conclusively demonstrates bad faith on the part of the appointing authority in a civil service job abolishment case. Accepting,arguendo, that appellant has established such a prima facie case, one must be mindful that the legal concept has been elaborated to serve the analytical and procedural purposes of a very different type of litigation, i.e., a statutory age discrimination action. In the classic age discrimination lawsuit, the prima facie case is only the first step in the analytical and probative process, as outlined above. To allow such a prima facie case to stand as irrefutable evidence of bad faith in the present case would be to give this procedural device far more weight here than in the context for which it was formulated, a rule which we decline to adopt.
Moreover, the present record does not support appellant's assertions in this respect. Most critically, appellee is able to point to a number of division employees older than appellant who were offered positions within the division after the reorganization. These include the appointment of John Schalip, approximately eight years older than appellant, who was appointed to an NRA3 position after the reorganization. The regulatory and industrial changes giving rise to the reorganization of the Division, as well as the credible evidence of the purpose and effect of the reorganization as discussed in connection with appellant's first two assignments of error, also serve to rebut appellant's assertions of age discrimination and bad faith. Appellant has not advanced facts, other than the bare citation to his own age, to rebut this evidence of proper purpose for the adverse job action other than age discrimination.
In summary, we find that appellant has not demonstrated bad faith on the part of the appellee. Therefore, appellant's third assignment of error is overruled.
Based upon the foregoing, appellant's first, second and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas affirming the order of the SPBR is affirmed.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.
[1] Another plaintiff below, Gregory D. Mills, has elected not to appeal the court of common pleas' decision.