THE STATE, EX REL. OGAN, APPELLANT AND CROSS-APPELLEE,
v. TEATER, DIRECTOR, DEPT. OF NATURAL RESOURCES,
APPELLEE AND CROSS-APPELLANT.

236

(No. 77-994—Decided May 17, 1978.)

238

*Messrs. Clayman & Jaffy* and *Mr. John W. Kenesey*, for appellant and cross-appellee.

*Mr. William J. Brown*, attorney general, *Mr. Larry R. Zingarelli* and *Mr. Loren L. Braverman*, for appellee and cross-appellant.

## I.

SWEENEY, J. The first issue before the court is whether respondent timely filed his motion for cross-appeal in the Court of Appeals. Relator contends that because respondent failed to file his notice of cross-appeal within 10 days of the date on which the first notice of appeal was filed by relator, as required by Section 1(A)(d), Rule I of the Rules of Practice of the Supreme Court of Ohio, this court should dismiss respondent's cross-appeal. Relator seeks an interpretation of the Rules that this court must reject.

Section 1, Rule I of the Rules of Practice provides in pertinent part:

"(A) The notice of appeal from a Court of Appeals must be filed in the court from which the case is appealed within thirty days from the entry of judgment or final order appealed from * * *.

"* * *

"(d) If a timely notice of appeal is filed in the Court of Appeals by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed."

Section 1(A) of Rule I expressly gives a party wishing to appeal a decision rendered by the Court of Appeals 30 days from the date on which judgment was entered to file his notice in that court. Section 1 (A)(d) of Rule I, which provides that an opposing party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, does not in effect limit the 30-day time period for the opposing party in situations where the party who initially files does so at the beginning of the 30-day period; but, rather, it extends the time period for the opposing party by prescribing that if the party who initially files does so at the end of the 30-day period, the opposing party will still have 10 remaining days in which to file his notice of appeal. Thus, the opposing party will have 30 days from the date on which the Court of Appeals entered its judgment or 10 days from the date on which

the other party filed his notice of appeal in that court, whichever is later, to file his notice of appeal in that court.

Because respondent in this cause filed his notice of appeal in the Court of Appeals within 30 days from the date on which that court entered its judgment, his cross-appeal is properly before this court for review and final determination.

## II.

The second and third issues confronting this court are whether relator may file a complaint for a writ of mandamus in the Court of Appeals requesting that court to order respondent to reinstate him to his former job location at Deer Creek State Park, and, if so, whether a clear legal duty exists on the part of respondent to restore relator to both his original job classification and job location as of September 23, 1975, the date of the layoff.

The Court of Appeals in effect found that the relator's reassignment to Deer Creek State Park came within the provisions of R. C. 124.33 and that relator, in failing to exercise his right of appeal provided in that section, was not entitled to contest his transfer by means of a mandamus action. This court is not persuaded that the provisions for appeal of a job transfer provided under R. C. 124.33 apply to the present situation where an employee has been recalled from a layoff list.

In a layoff situation, three events may occur with respect to the continuing employment of a classified civil servant. In the first instance, he may be removed from his employment in the agency because he has the fewest number of retention points of any employee within his classification and category as set forth in Ohio Adm. Code Rule 123:1-41-01(A). In the second instance, although the employee may be displaced by a fellow employee having more retention points and in a higher classification than himself, he, in turn, may displace another employee whom he outranks. Ohio Adm. Code Rule 123:1-41-01(C). In the third instance, he simply may be transferred; that is, although retaining the same job classification, he may be relocated

within the agency or to another agency. Ohio Adm. Code Rule 123:1-25-01.

Where the employee is removed from his employment, or where he is reduced in pay or position because of layoff, he has the right to appeal the removal or reduction to the board pursuant to R. C. 124.34.[2] Where the employee, through displacement, is simply assigned to a similar position within the agency, he may appeal such transfer pursuant to R. C. 124.33.[3]

The above provisions granting employees subject to layoff or displacement the right of appeal have been codified in Ohio Adm. Code Rule 123:1-41-11 which states:

"Any laid off or displaced employee may file a written appeal of the layoff or displacement with the State Personnel Board of Review. Such appeal must be filed no

---

[2]R. C. 124.34 provides:

"The tenure of every officer or employee in the classified service of the state * * * shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, * * * or removed, except as provided in section 124.32 of the Revised Code * * *.

"In any case of reduction, * * * or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, * * * or removal * * *. Such order shall be filed with the director of administrative services, and state personnel board of review * * *.

"Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review * * *."

[3]R. C. 124.33 provides, in part:

"An appointing authority may, with the approval of the director of administrative services, permanently transfer an employee in the classified service of the state from his original position to a similar position in another office, department, or institution. * * * The appointing authority requesting the permanent transfer shall notify the employee and the director in writing of the request to transfer. * * * If he [the director] finds that the transfer is necessary * * * he shall notify the appointing authority and the employee * * *.

"* * *

"If the employee does not wish to be transferred or he feels that the director's decision regarding the need for a permanent change of residence has been unfair, he may within ten days after receipt of such notice appeal the transfer to the state personnel board of review * * *."

later than 10 days after the effective date of layoff or displacement."

In the instant cause, when relator was recalled from the layoff list, it is clear that the time for appeal from the layoff order of the appointing authority had passed. At the time of reinstatement, relator had no right to appeal his reassignment to a new job location. See Ohio Adm. Code Rule 123:1-41-10(C).

Thus, the Court of Appeals erred in finding that relator, pursuant to R. C. 124.33, had the opportunity of appealing his assignment to Deer Creek State Park at the time of his reinstatement.

Although the Court of Appeals failed to formally address itself to the issue of whether a clear legal duty existed on the part of respondent to restore relator to his original job location as of September 23, 1975, this court, in the interest of judicial economy, will confront the issue at this time.

The Director of Administrative Services has clearly provided the remedy to be afforded classified employees who have been improperly laid off by an appointing authority. Ohio Adm. Code Rule 123:1-41-13(A) states:

" * * * Any employee wrongfully laid off or displaced, or laid off or displaced contrary to Chapter 123:1-41 shall have the right to request reinstatement, and the appointing authority the duty to reinstate such employee *to the classification laid off or displaced from*, if such employee has sufficient retention points to remain in that classification. * * *" (Emphasis added.)

This rule demonstrates that although an employee who has been wrongfully laid off must be restored to his original job classification as of the date of the layoff, there is no requirement that the employee must be restored to his original job location as well.

The only right an employee has with respect to where he is reinstated when recalled to work from an improper layoff is provided in the general provision of Ohio Adm. Code Rule 123:1-41-02 which states:

"Each of the layoff jurisdictions, as defined herein, is an autonomous jurisdiction and layoff, displacement, reinstatement, and reemployment procedures shall apply only within the jurisdiction affected by the layoff."

As long as the appointing authority reinstates the employee to a position within the same layoff jurisdiction as he originally worked, the appointing authority's duties with respect to restoring the employee to his original "job location" have been met.

In the instant cause, relator was improperly laid off from his job as a Ranger II in Madison County, and was reinstated on November 6, 1975, to the same job classification in Licking County. Licking and Madison Counties are both in District 7. Ohio Adm. Code Rule 123:1-41-02(A) (7). Upon disaffirmance of the layoff order by the board, the only duty remaining for respondent to perform was to reinstate relator to his job classification *as of September 23, 1975*, the date relator was improperly laid off, since relator had already been recalled to work within the same layoff jurisdiction and the same job classification as previously employed.[4]

Thus, the Court of Appeals properly held that respondent had only the clear legal duty of restoring relator to his job classification as of September 23, 1975.

### III.

The fourth issue confronting this court is whether respondent, in his answer to a complaint requesting a writ of mandamus filed in the Court of Appeals to enforce the board's order, may raise as an affirmative defense and counterclaim that the board abused its discretion in disaffirming his layoff order.

Relator contends, on the basis of this court's holding

---

[4]The court recognizes that the State Personnel Board of Review could have issued an order requiring that relator be restored to his former job location as well as his former job classification as of the date of the layoff in this cause. Absent such order, the appointing authority had no clear legal duty to restore relator to his former job location at Deer Creek State Park.

in *State, ex rel. Bingham,* v. *Riley* (1966), 6 Ohio St. 2d 263, certiorari denied 385 U. S. 974, that the decision of the state board in disaffirming the layoff order was not subject to collateral attack and, therefore, could not be challenged by respondent in his answer filed in the Court of Appeals.

Relator's reliance on the *Bingham* case is misplaced. In that case, a county engineer failed to appeal an adverse decision of the Court of Common Pleas which affirmed the board's order disaffirming the county official's removal orders. In a subsequent mandamus action brought by the employees in the Court of Appeals to enforce the board's order, this court held that the county engineer could not at that time collaterally attack the board's order by means of demurrer, since the matter was *res judicata.*

In the instant cause, it is not disputed that respondent, as a director of an administrative agency, had no right of appeal from the adverse decision of the board disaffirming the layoff order. Paragraph three of the syllabus in *State, ex rel. Osborn,* v. *Jackson* (1976), 46 Ohio St. 2d 41. Thus, the issue of whether the board abused its discretion in issuing the order favorable to relator could not have been a matter of *res judicata* with respect to respondent.

Respondent, having no adequate remedy at law to challenge the board's order, could have brought an action in mandamus, since, as in cases involving the Industrial Commission, although there is no right of appeal from certain determinations made by the state agency, arbitrary, unreasonable or unlawful orders may be challenged by bringing such an action. *State, ex rel. Bevis,* v. *Coffinberry* (1949), 151 Ohio St. 293, 296; *State, ex rel. Brewer,* v. *Indus. Comm.* (1950), 153 Ohio St. 471, 473.

Therefore, it follows that although relator first filed in the Court of Appeals for an extraordinary writ, respondent could raise the affirmative defense and counterclaim of an abuse of discretion in his answer.

### IV.

The fifth issue confronting this court is whether the

board utilized the proper standards of review in hearing relator's appeal from the layoff order.

In the instant cause, the board, in its order disaffirming the layoff, disagreed with the conclusions of the Director of Natural Resources that there existed a lack of funds, and found that the reclassifications, demotions, and transfers of classified employees occurring within a few weeks prior to the layoffs were for the purposes of preventing the layoffs of selected persons, and thus were in contravention of proper layoff procedures.

The director contends that the disaffirmance of the layoff order was improper since the board, in reviewing the causes and procedures for the layoff, could only disaffirm the layoff if it found that the appointing authority had abused his discretion. In support of this contention, the director cites language from *Jackson* v. *Coffey* (1977), 52 Ohio St. 2d 43, 45, wherein this court stated:

"Simply because R. C. 124.03 provides that the State Personnel Board of Review may affirm, disaffirm, or modify the decisions of the appointing authorities, does not imply that the board may, in its discretion, overrule lawful decisions made by the appointing authority."

The director's contention that the State Personnel Board of Review may only disaffirm layoff orders of the appointing authority where it finds that the appointing authority abused his discretion is clearly in error. The General Assembly, in enacting R. C. 124.03(A), gave the board broad powers in reviewing final decisions of the appointing authorities. By providing that the board may affirm, disaffirm, or modify the decisions of the appointing authority relative to layoff, the General Assembly has authorized the board to disaffirm layoff orders not only where it finds that the appointing authority acted arbitrarily, unreasonably or unlawfully, but also where it finds from an independent review of the layoff that the decisions made and actions taken by the appointing authority regarding the layoff of employees were improper or unnecessary.

The above holding in no way conflicts with this court's holding in *Jackson* v. *Coffey, supra.* In that case an ex-

press statute, R. C. 124.57, prohibited classified employees from serving as officers in political organizations. Notwithstanding the provisions of R. C. 124.57, the board disaffirmed the removal order of the appointing authority which had properly removed an employee for holding public office while employed in the classified service of the state. This court held that the board erred in disaffirming the removal order, not because the board could never disaffirm otherwise lawful orders issued by the appointing authority, but because the board itself was obligated to carry out the statutory provisions proscribing classified employees from engaging in political activity. The court in effect held that the review powers granted the board under R. C. 124.03(A) did not place the board above the law. The cited language from the case cannot be read out of context.

Thus, under R. C. 124.03(A) the board is empowered to determine whether a layoff was necessary, and whether proper layoff procedures were followed.

## V.

The sixth issue confronting this court is whether the board, although having broad powers under R. C. 124.03 (A) to review decisions of the appointing authority relative to layoffs, abused its discretion in disaffirming the layoff order of September 23, 1975. The director contends that since there was no evidence to justify the board's ruling finding that there were sufficient funds to enable the department to retain all of its employees, and since there was no finding of the board that the proper steps for layoff had not been taken according to Ohio Adm. Code Chapter 123:1-41, the board's order of disaffirmance constituted an abuse of discretion. We disagree.

Our review of the record indicates that there was conflicting evidence concerning the availability and sufficiency of funds within the Department of Natural Resources to meet the salary requirements of its employees. Because this court will not substitute its judgment for the board's where there is some evidence supporting the board's order, see

*State, ex rel. Bd. of Edn. of Whithall,* v. *Bd. of Edn. of Columbus* (1961), 172 Ohio St. 533, 535, *State, ex rel. Marshall,* v. *Keller* (1968), 15 Ohio St. 2d 203, 205, the court will not upset the prior determination of the board with respect to this issue.

Furthermore, contrary to what the director contends, the board clearly found that the proper layoff procedures were not followed, as evidenced by the finding in its order that "* * * the procedure followed in reclassification, demotion, or transfer, within a few weeks prior to the layoff was for the purpose of preventing the layoff of selected persons."

Therefore, the Court of Appeals properly affirmed the board's order disaffirming the director's layoff order.

## VI.

The remaining issue confronting this court is whether the Court of Appeals erred in refusing to order that respondent reinstate not only relator to his original job classification as of September 23, 1975, but also all laid-off employees within the Department of Natural Resources similarly situated. Because relator in his complaint for a writ of mandamus made none of the allegations necessary for the maintenance of a class action as required under Civ. R. 23, that court considered the cause as an individual action and restricted the issuance of the writ for the benefit of relator alone. This court finds no error.

The burden of establishing that a cause of action merits treatment as a class action rests squarely on the party bringing suit. See *Tolbert* v. *Western Electric Co.* (N. D. Ga. 1972), 56 F. R. D. 108, 113; *McFarland* v. *UpJohn Co.* (E. D. Pa. 1977), 76 F. R. D. 29, 31.

Where, as in the instant cause, the party bringing suit does not attempt to bring his cause of action within the provisions of Civ. R. 23, it is clear that the court may properly limit its holding to that of the party alone. See *Glodgett* v. *Betit* (D. Vt. 1973), 368 F. Supp. 211, 213-215; *Baxter* v. *Minter* (D. Mass. 1974), 378 F. Supp. 1213, 1215-1216; *Beasley* v *Kroehler Mfg. Co.* (N. D. Tex. 1976), 406

F. Supp. 926, 930-931; *Green* v. *Philbrook* (D. Vt. 1977), 427 F. Supp. 834, 837.

In conclusion, the court finds that the Court of Appeals did not commit reversible error in issuing a writ of mandamus ordering that relator be reinstated to his original job classification as of the date of the illegal layoff, September 23, 1975. The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and LOCHER, JJ., concur.